## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**RODNEY LEE WILLIAMS**                                                **PLAINTIFF**

v.                                                                            No. 5:21-cv-47-BJB

**LELAND DUDEK,**                                                       **DEFENDANT**
Acting Commissioner of Social Security

\* \* \* \* \*

### ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES

After Rodney Williams filed a disability-benefits complaint against the Social Security Commissioner, the Court ruled in his favor and remanded the case for further proceedings. DN 30. On remand, the agency awarded Williams $87,138.00 in past-due benefits. Notice of Award (DN 36-1) at 3. Only attorney fees remain at issue.

Williams' attorney, David Chermol, seeks a $21,784.50 fee award under the parties' fee agreement, which entitles him to 25% of the past-due benefits awarded. Motion for Attorney Fees (DN 36); Retainer and Fee Agreement (DN 36-2) at 1.[1] Chermol served copies of the motion for attorney fees on both Williams and the Social

---

[1] The agency has already paid Williams 75% of the past-due-benefits award and withheld the remaining 25% ($21,784.50) for his "fees for representation before court." 42 U.S.C. § 406(b); *see* Motion for Attorney Fees at 2; Notice of Award at 3. That balance matches Chermol's request for attorney fees, but the accounting is more complex.

The Court has already awarded $6,000 in attorney fees under the Equal Access to Justice Act (EAJA). *See* DN 34. Those fees "are awarded in excess of the benefits due, as opposed to being deducted from the claimant's benefits award." *Turner v. Commissioner*, 680 F.3d 721, 723 (6th Cir. 2012). So Chermol has already received $6,000 in fees, but the 25% withheld from the past-due benefits remains undisbursed.

When courts award both an EAJA fee and a § 406(b) fee, attorneys must refund the smaller amount to the claimant. *Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Under this standard, Chermol would receive the full § 406(b) fee, then refund $6,000 to Williams.

To streamline the process, Chermol proposes receiving $15,784.50—the $21,784.50 award less the $6,000 EAJA offset—while the agency releases the remaining withheld funds directly to Williams. Motion for Attorney Fees at 2. Other courts in the Sixth Circuit have followed this approach. *See, e.g., Ringel v. Commissioner*, 295 F. Supp. 3d 816, 819 (S.D. Ohio 2018).

Security Administration. Neither have objected. *See* Motion for Attorney Fees at 4; Response to Motion for Attorney Fees (DN 40) at 1.

The Court referred the case to the Magistrate Judge for a report and recommendation. DN 19. Magistrate Judge King recommended awarding $21,198.00 in fees—$586.50 less than requested—to compensate Chermol at a $500 hourly rate and his senior associate at a $460 rate, consistent with their experience and in line with prior awards in this District. Report and Recommendation (DN 43). Chermol objected for the reasons discussed below. Objection to R&R (DN 44).

*

A court may award "a reasonable fee" to an attorney who successfully represents a Social Security claimant, but the fee may not exceed 25 percent of the past-due benefits award. 42 U.S.C. § 406(b)(1)(A). Courts in the Sixth Circuit afford any contingency-fee agreements under that cap a "rebuttable presumption of reasonableness." *Lasley v. Commissioner*, 771 F.3d 308, 309 (6th Cir. 2014).

First, Chermol contends that the lack of an objection deprives the Court of discretion to alter the fee award contemplated by his contingency agreement. Response to Order (DN 42) at 5. He cites Supreme Court precedent for the proposition that "district courts retain discretion in deciding reasonable fee awards *only so long as any reduction is based on objections actually raised by an adverse party*." Objection to R&R at 1–2 (emphasis added) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). And he cites a Sixth Circuit decision in suggesting that courts in this circuit abuse their discretion if they "reduc[e] the amount of 406(b) fees sought despite the lack of any objection from either SSA or the claimant." *Id.* at 2 (citing *In re Horenstein*, 810 F.2d 73, 75 (6th Cir. 1986)). If he's right, that ends the analysis—the Court would have no discretion to alter an unopposed fee award and would be required to grant Chermol's motion.

But district courts do not categorically abuse their discretion by reducing an unopposed fee award.

*Hensley* makes that clear: a district court "necessarily has discretion in making th[e] equitable judgment" to reduce fee awards. *Hensley*, 461 U.S. at 437. True, that discretion "must be exercised in light of [particular] considerations," including the reasonableness of the hours and rate and the quality of the results obtained. *Id.* at 433–36. "Ideally, … litigants will settle the amount of a fee." *Id.* at 437. But whether they do or not, *Hensley* "reemphasize[d] that the district court has discretion in determining the amount of a fee award." *Id.*

And *Horenstein* requires courts in the Sixth Circuit to assess unopposed § 406(b) awards with care, but it doesn't bar courts from reducing those awards. The

district court's failure in *Horenstein* was not that it reduced an unopposed fee award, but that it did so without "an individualized analysis of the circumstances of th[e] case," *Horenstein*, 810 F.2d at 75, that is—the "Step Two" factors discussed below. The district court failed to exercise proper discretion when it took a "generalized, as opposed to … individualized approach to the fee request" by opining that social security appeals could categorically be handled in 20 to 25 hours. *Id.* That kind of "broad-brush approach" is especially inappropriate when no party has objected. *Id.*

The district court's role is not just a matter of discretion. Supreme Court precedent requires district courts to scrutinize fee agreements: "Although the contingency agreement should be given significant weight in fixing a fee, a district judge *must* independently assess the reasonableness of its terms." *Gisbrecht v. Barnhart*, 535 U.S. 789, 808 (2002) (emphasis added) (quoting *McGuire v. Sullivan*, 873 F.2d 974, 983 (7th Cir. 1989)). A court that passively accepts a fee agreement doesn't just fail to exercise discretion—it fails to discharge its duty of independent review.

Here, neither the Social Security Commissioner nor the claimant—who will pay the fee from his disability award—objected to Chermol's request. Under *Hensley* and *Horenstein*, the Court shouldn't disturb their agreement without a careful, individualized analysis. But that agreement doesn't relieve the Court of any and all obligation to scrutinize a fee request.

**\* \***

Generally, a court should only depart from a fee agreement for one of two reasons: 1) counsel's improper conduct or ineffectiveness, or 2) situations that would provide a "windfall" to the attorney, either due to an "inordinately large benefit award" or "minimal effort expended." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989). Nothing in the record brings counsel's conduct or effectiveness into question, so only the "windfall" analysis applies here.

In the Sixth Circuit, the "windfall" analysis follows a two-step process. Step one asks whether the calculated hourly rate (known as the "hypothetical hourly rate") is "less than twice the standard rate." *Hayes v. Secretary*, 923 F.2d 418, 422 (6th Cir. 1990). If so, the award is *per se* reasonable and not a "windfall." *Id.* (contingency-fee cases warrant higher rates due to the risk the attorney assumes). If not, courts advance to step two, which asks whether record evidence rebuts the presumption of reasonableness. *Id.* ("If the calculated hourly rate is [more than twice the standard rate], then the court may consider arguments designed to rebut the presumed reasonableness of the attorney's fee.").

3

**Step one.** To compare the "hypothetical hourly rate" to the "standard rate," courts first "divid[e] the number of hours worked for the claimant into the amount of the fee permitted under the contract [i.e., the contingent fee]." *Id.* That's the hypothetical rate. For the "standard rate" comparator, courts have used the approved EAJA rate with the Sixth Circuit's approval. *See Lasley*, 771 F.3d at 310 (citing *Edwards v. Commissioner*, No. 1:08-cv-815, 2011 WL 1002186, at *1 (S.D. Ohio Mar. 16, 2011).

Chermol's "hypothetical rate" divides the award he seeks ($21,784.50) by the total hours he worked for the claimant. The Report & Recommendation and Chermol both agree that Chermol and his senior associate spent a combined total of 43.5 hours on the claim.[2] R&R at 5; Objection to R&R at 3. That makes the hypothetical hourly rate $500.79 ($21,784.50 divided by 43.5 hours).

For the standard rate, courts in this district have used an EAJA rate of $140 as the comparator for *per se* reasonableness. *See Philpott v. Commissioner of Social Security*, No. 3:15-cv-554, 2021 WL 2109225, at *4 (W.D. Ky. May 25, 2021). Chermol argues that the EAJA rate for the district should be higher. Earlier in this case, he requested an hourly rate of $205 under the EAJA and argued that a proper inflation adjustment would make the rate $230.82. Motion for EAJA Attorney Fees (DN 32) at 3. Here, the difference is irrelevant. Even at Chermol's inflation-adjusted rate of $230.82, the doubled rate would be $461.64—well under the $500.79 hypothetical rate for the award he seeks. The hypothetical rate for Chermol's requested award is therefore not *per se* reasonable because it is not "less than twice the standard rate." *See Hayes*, 923 F.2d at 422.

**Step two.** But an "hourly rate … greater than twice the standard rate may well be reasonable," *id.*, and indeed is presumed reasonable if it follows from a fee agreement granting no more than 25% of a benefits award, *see id.* at 421. Step two considers whether record evidence rebuts the presumption of reasonableness. *See id.* That inquiry "may include consideration of factors such as the character of the representation and results achieved, whether counsel was responsible for delay, and whether the benefits were large in comparison to the time expended by counsel."

---

[2] Chermol and his senior associate also worked 4 hours to prepare for "administrative level" representation and 11.3 hours "researching and preparing" the response to the Court's order for briefing on attorney fees. *See* Response to Order at 4. None of these hours count toward the attorney's fees award, though, because they "did not contribute to Plaintiff's being the prevailing party in the sense of obtaining a judicial remand." R&R at 5 (citing *Horenstein v. Secretary*, 35 F.3d 261, 262 (6th Cir. 1994)); *see also* 42 U.S.C. § 406(b)(1)(A) (permitting fees only for an attorney's representation of the claimant before the court).

4

*Broxton v. Commissioner*, No. 2:19-cv-13595, 2024 WL 2863295, at *1 (E.D. Mich. Apr. 4, 2024) (citing *Gisbrecht*, 535 U.S. at 807–08).

Several facts in the record support the presumption of reasonableness and none rebut that presumption.

*First*, Chermol's filings demonstrate that he delivered a successful result for the claimant in a complex case. He attests that the case required his personal attention "because it involved a constitutional challenge under the Appointments Clause"—an issue for which he "was the lead disability attorney in the nation … both in its first incarnation … and its more recent incarnation." Response to Order at 3. Indeed, Chermol claims to have "brought more *Lucia* [Appointments-Clause] based appeals … than any other disability attorney in the nation." Plaintiff's Memorandum in Support of Motion for Summary Judgment (DN 22-1) at 7. And he was successful here. His advocacy resulted in a remand for further administrative proceedings and a benefits award after the Social Security Appeals Council had denied review. *See* Motion for Attorney Fees at 1, 3.

*Second*, even though the award Chermol requests is more than twice the standard rate, the benefit is not necessarily large in comparison to the time expended. Because attorneys don't prevail in every case, "[c]ontingent fees generally overcompensate in some cases and undercompensate in others." *Royzer v. Secretary*, 900 F.2d 981, 982 (6th Cir. 1990). That doesn't mean *any* rate is acceptable. For instance, in *Lasley*, the Sixth Circuit affirmed the reduction of a fee with a $600 per hour hypothetical rate because it "grossly exceeded … the standard rates applied to social security fee requests" in the district for a case with "relative[ly] simpl[e]" representation. 771 F.3d at 310. Here, Chermol's hypothetical rate is lower and (as discussed above), his representation was more complex.

The risk Chermol assumed, coupled with market rates for this kind of work, also support the reasonableness of the requested award. Chermol faced a considerable chance that Williams would recover nothing in this case. A victory required him to obtain a remand in federal court and then to win before an ALJ—making his total odds of victory far less than 50% according to recently published data. *See* Response to Order at 11 (citing *2022 Waterfall Charts*, National Organization of Social Security Claimants' Representatives (Feb. 28, 2023), https://nosscr.org/article/2022-waterfall-charts/). He has provided affidavits from attorneys in the same district who state that "work of this kind would bill around $250.00 to $350.00 per hour on a *non-contingent* basis. If the work were being done on a contingent basis, the effective hourly rate would have to be far higher." Affidavit of Philip Litteral (DN 42-3) ¶ 5. *See also* Affidavit of Karl Osterhout (DN 42-4) ¶ 5; Affidavit of Clifford M. Farrell (DN 42-5) ¶ 6. If attorneys would bill $250 or more on

a non-contingent basis for this kind of work, it is not unreasonable that they could agree to a contingency arrangement that effectively awarded $500 an hour when the odds of recovery are below 50%.[3]

With these factors supporting a presumption of reasonableness, and without any factors to rebut that presumption, the Court grants the Plaintiff's motion for attorney's fees (DN 36) and declines to adopt the Report and Recommendation (DN 43). The Court will enter final judgment in Plaintiff's favor in a subsequent order, *see* FED. R. CIV. P. 58.

Benjamin Beaton, District Judge
United States District Court

April 29, 2025

---

[3] Chermol also argues that the Sixth Circuit has warned courts not to give "great weight" to prior fee awards. Objection to R&R at 4 (citing *Doucette v. Commissioner*, 13 F.4th 484, 491 (6th Cir. 2021)). But *Doucette* considered awards for EAJA fees, not § 406(b) fees. It followed the Sixth Circuit's process for calculating EAJA fees, which takes an entirely different path than for awarding § 406(b) fees. *Compare Doucette*, 13 F.4th at 488 ("To calculate [EAJA] fee awards, district courts use the lodestar amount ….") *with Gisbrecht*, 535 U.S. at 792 (for § 406(b) awards, courts should determine whether a contingency fee was "reasonable," instead of "begin[ning] with a lodestar calculation"). The Court declines to follow this approach and instead decides this case according to the presumption of reasonableness standard established by *Lasley*.